STATE OF NORTH CAROLINA v. DELMOS EUGENE BRYANT,
STEVE HOLLOMAN, AND SHERMAN WHITE

No. 28

(Filed 11 October 1972)

1. **Indictment and Warrant §§ 1, 4— no preliminary hearing — hearsay evidence before grand jury — no denial of due process**

   Neither the failure to furnish a preliminary hearing nor the use of hearsay evidence before the grand jury is ground for quashal of a bill of indictment, nor does the sum of the two result in such a denial of due process that the indictment must be quashed.

2. **Jury § 6— examination of prospective jurors — supervision by trial judge — no abuse of discretion**

   Where two questions put to prospective jurors by defense counsel were confusing and contained an incorrect and inadequate statement of the law with respect to burden of proof in a criminal case, the trial court did not abuse its discretion in sustaining objections to the questions.

3. **Criminal Law § 89— corroborative statement — slight variance — admissibility of statement**

   Slight variances between a witness's testimony and his corroborative written statement did not render the statement inadmissible.

4. **Criminal Law § 89— corroborative statement — failure to request limiting instructions**

   Failure of the trial court to instruct at the time of its admission that certain evidence was admitted for corroborative purposes only did not render the evidence inadmissible in the absence of defendant's request for a limiting instruction.

5. **Criminal Law § 95— presumption that jury followed instructions**

   Where the trial court properly instructs the jury not to consider challenged evidence as to one defendant, that defendant is in no position to complain, as the law presumes that the jury follows the judge's instructions.

6. **Criminal Law §§ 112, 168— instruction of reasonable doubt as possibility of innocence — favorable to defendant — no error**

   In a first degree murder prosecution, the trial judge's definition of reasonable doubt as a possibility of innocence was more favorable to defendants than was required and therefore did not constitute prejudicial error.

7. **Criminal Law § 114— no expression of opinion in jury instructions**

   The trial judge's instruction to the jury having to do with their attitudes and conduct and arrival at a just and proper verdict did not constitute an expression of opinion in violation of G.S. 1-180.

8. **Criminal Law § 172— possible verdict imposing death penalty — verdict of life imprisonment — error cured**

    Where a verdict imposing the death penalty is erroneously submitted to a jury, a defendant is not entitled to a new trial on that ground alone; hence, the verdict of the jury in a first degree murder prosecution requiring imposition of a sentence of life imprisonment cured any possible error in submitting to the jury as one of the possible verdicts a verdict imposing the death penalty.

APPEAL by defendants from *Braswell, J.,* 2 February 1972 Criminal Session of WAKE Superior Court.

Defendants were tried upon bills of indictment charging each of them with first degree murder. Each defendant entered a plea of not guilty, and the cases were consolidated for trial.

The State's evidence tended to show that on 14 October 1971 three men entered a grocery store located on E. Edenton Street in Raleigh known as Smiley's Produce & Grocery. Mrs. Smiley, the store owner's wife, was in the back part of the store when the men entered. John Thomas Massey, the victim, was in the front of the store. One of the men who entered the store carried a shotgun. This man, who was later identified as defendant Delmos Eugene Bryant, shot and killed Mr. Massey after the other men took approximately $34.00 from the cash drawer. The three men fled in an automobile driven by Sherman White, one of the defendants.

The State relied heavily on the testimony of James Henry Williams, who admitted his part in the crime while implicating defendants. Mrs. Smiley stated that she heard the shot after hearing Mr. Massey say, "Take the money and don't hurt me" or "don't bother me." She saw three "colored men" leave the store, but she was unable to make an in-court identification of any of the defendants.

The State's other evidence need not be recounted for the purposes of this decision.

Defendant Sherman White testified and denied taking part in the crime. He also offered other evidence in the nature of an alibi. Defendant Bryant testified that he was in no way involved in the crime. Defendant Holloman offered no evidence.

The jury returned verdicts of guilty of murder in the first degree with a recommendation of life imprisonment as to each defendant. Each defendant appealed from judgment imposing a sentence of life imprisonment.

*Attorney General Morgan and Assistant Attorney General Rich for the State.*

*Roger W. Smith of Tharrington & Smith, for defendant White.*

*William W. Merriman III, of Merriman & Liles for defendant Holloman.*

*John H. Parker of Sanford, Cannon, Adams & McCullough, for defendant Bryant.*

BRANCH, Justice.

[1] Defendants' first Assignment of Error is stated as follows: "Where a criminal defendant is not afforded a preliminary hearing and the Grand Jury returns a true bill of indictment based upon hearsay evidence alone, should the indictment be dismissed?"

A preliminary hearing is not an essential prerequisite to the finding of a true bill of indictment in this State, and the absence of a preliminary hearing is not ground for quashal of an indictment. *State v. Hartsell,* 272 N.C. 710, 158 S.E. 2d 785; *State v. Overman,* 269 N.C. 453, 153 S.E. 2d 44; *State v. Hargett,* 255 N.C. 412, 121 S.E. 2d 589; *State v. Hackney,* 240 N.C. 230, 81 S.E. 2d 778.

It is also recognized in this State that an indictment is not subject to being quashed on the ground that the testimony before the Grand Jury was based on hearsay. *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174; *State v. Wall,* 273 N.C. 130, 159 S.E. 2d 317; *State v. Hartsell, supra; State v. Turner,* 268 N.C. 225, 150 S.E. 2d 406.

A defect in a bill of indictment can be taken advantage of only by a motion to quash or by a motion in arrest of judgment. *State v. Walker,* 249 N.C. 35, 105 S.E. 2d 101; *State v. Faulkner,* 241 N.C. 609, 86 S.E. 2d 81. Even conceding that the proper motion was made by each defendant in due time, this assignment of error cannot be sustained.

Defendants concede that the failure to furnish a **preliminary** hearing is not a ground for quashal of the bill of indictment. They likewise concede that the use of hearsay evidence before the grand jury is not ground for quashal. Defendants offer, without authority, the ingenious argument that the *sum*

of the two results in such denial of due process that the indictment must be quashed. We do not agree.

[2]   Defendant Bryant contends that the trial judge erred in sustaining the solicitor's objection to certain questions during the examination of prospective jurors.

The portion of the record pertinent to decision of this question is as follows:

> MR. PARKER: Members of the jury, I will ask you several questions as a group. My questions may require your raising your hands. As you heard the Judge's statement regarding reasonable doubt, each of you as members of the Jury, know that you have to return a verdict of not guilty or guilty. If you heard the evidence as presented here in this case and you thought that Delmos was probably guilty, and if you were not convinced absolutely that he was not guilty and you just thought he was probably guilty, will you be able to return a verdict of not guilty?

> OBJECTION SUSTAINED.

> EXCEPTION BY DEFENDANT BRYANT.

> DEFENDANT BRYANT'S EXCEPTION NO. 5.

> THE COURT: SUSTAINED as to phraseology. It is not in keeping with the rules and the laws.

> MR. PARKER: Members of the jury, would it bother or weigh on your conscience to render a verdict of not guilty if you thought the defendant was probably guilty?

> OBJECTION SUSTAINED.

> EXCEPTION BY DEFENDANT BRYANT.

> DEFENDANT BRYANT'S EXCEPTION NO. 6.

The Court, or any party to a civil or criminal action, has the right to inquire into the fitness or competency of a juror to determine whether grounds to challenge for cause exist and to enable counsel to intelligently exercise the peremptory challenges allowed by statute. The right to challenge is not given so as to allow a party to pick a jury, but so that he may obtain an impartial jury. G.S. 9-15 (a) ; *State v. Allred,* 275 N.C. 554, 169 S.E. 2d 833.

In this jurisdiction counsel's exercise of the right to inquire into the fitness of jurors is subject to the trial judge's close supervision. The regulation of the manner and the extent of the inquiry rests largely in the trial judge's discretion. *Karpf v. Adams* and *Runyan v. Adams,* 237 N.C. 106, 74 S.E. 2d 325. The overwhelming majority of the states follow this rule. See 99 A.L.R. 2d 7, ANNO. JURY—VOIR DIRE—HYPOTHETICAL QUESTION, for a full discussion and citation of authority.

A hypothetical question is improper when it is faulty in form so as to be ambiguous and confusing, or when it is phrased so as to contain an incorrect or inadequate statement of the law. *State v. Faciane,* 233 La. 1028, 99 So. 2d 333; *State v. Foster,* 150 La. 971, 91 So. 411; *Cadena v. State,* 94 Tex. Crim. 436, 251 S.W. 225; *Harrison v. State,* 80 Tex. Crim. 457, 191 S.W. 548.

*Grizzell v. State,* 164 Tex. Crim. 362, 298 S.W. 2d 816, is factually similar to instant case. There the trial judge excluded the following question: "[If] you thought the defendant might be guilty but if you believed that the State had failed to show you by its evidence beyond a reasonable doubt the defendant was guilty, would you return a verdict of not guilty?" In affirming the action of the trial judge, the reviewing court, *inter alia,* pointed out that the jury had been informed that the State had the burden of proving the defendant guilty beyond a reasonable doubt and stated that the trial judge "must be allowed some discretion in limiting examination of prospective jurors or some trials would never terminate."

In instant case Judge Braswell had informed the jury that the burden of proof was on the State to prove defendant guilty beyond a reasonable doubt prior to the examination of the jurors by defense counsel. It is noted that in sustaining the solicitor's objection to the above quoted questions the trial judge stated that the objection was sustained as to phraseology. Manifestly, the question was confusing and contained an incorrect and inadequate statement of the law. Nothing else appears in the record concerning defendant's inquiry as to the fitness of jurors, and we must therefore assume that defendants in all other respects were allowed to fully inquire into the fitness and competency of the jurors.

No abuse of discretion is shown, and this assignment of error is overruled.

State v. Bryant

**[3]** Defendant White objected to the introduction of a written statement made by witness James Henry Williams after Williams had testified. He first argues that the written statement did not corroborate the prior testimony of the witness. To sustain this argument he points to certain variances between the actual testimony of Williams and the written statement made by Williams, to wit:

" (1) Williams' TESTIMONY was that 'Holloman told White, "Delmos shot the man." Sherman said that he heard the shot.' His STATEMENT WAS: 'Delmos told Sherman the gun went off and Sherman said "I heard the shot back there."' (2) TESTIMONY: 'Holloman said he was going somewhere and get a gun. Sherman White and Steve Holloman left in the car.' STATEMENT: 'I heard Steve tell Sherman to carry him over to his house to get a pistol.' (3) TESTIMONY: 'We counted the money and Steve Holloman said "to think we killed a nigger for $7.00."' STATEMENT: 'Steve told Delmos and Sherman to think they would kill a nigger for eight dollars.' "

The evidence tending to corroborate a witness is admissible for that purpose, *State v. Lippard,* 223 N.C. 167, 25 S.E. 2d 594, and slight variances in the corroborative testimony do not render it inadmissible. *State v. Case,* 253 N.C. 130, 116 S.E. 2d 429; *State v. Litteral,* 227 N.C. 527, 43 S.E. 2d 84.

Clearly, there were no material variances between the testimony of Williams and his written statement.

**[4]** Defendant White further argues that the written statement was improperly admitted because the court failed to give a limiting instruction when it was admitted. Defendant failed, however, to request a limiting instruction when the corroborative written statement was admitted.

When a defendant does not specifically request an instruction restricting the purpose of corroborative evidence, its admission is not assignable as error. Rule 21, North Carolina Supreme Court Rules; *State v. Corl,* 250 N.C. 252, 108 S.E. 2d 608; *State v. Lee,* 248 N.C. 327, 103 S.E. 2d 295; *State v. Walker,* 226 N.C. 458, 38 S.E. 2d 531.

White also contends the corroborative evidence was improperly admitted because he was deprived of his right to cross-examine Williams concerning the written statement.

Ordinarily, as here, corroborative evidence is introduced after the witness has testified. The rule requiring that there can be no material variance between the witness' testimony and the evidence offered in corroboration diminishes the necessity of recross-examination of the witness. Defendant's counsel must have recognized the futility of further cross-examination of Williams, for he failed to request permission to recall him.

We find no error in the admission of the corroborative evidence.

[5]   Defendant White next asserts that he was prejudiced by certain testimony elicited from the witness Iredell Staton concerning an article printed in the Raleigh Times and the admissions relating thereto by defendant Holloman. The court sustained White's objection, stating: "It is not competent against him" and "Don't consider this together. It is competent only as to the defendant Steve Holloman."

White is not in a position to complain. His objection to the evidence was sustained, and the court properly instructed the jury not to consider the challenged evidence as to him. The law presumes the jury followed the judge's instructions. *State v. Long,* 280 N.C. 633, 187 S.E. 2d 47; *State v. Moore,* 276 N.C. 142, 171 S.E. 2d 453.

There is no merit to this assignment of error.

[6]   All defendants contend that the trial judge improperly defined "reasonable doubt" as a "possibility of innocence." In its charge the court defined reasonable doubt as follows:

"When I speak of reasonable doubt I mean a possibility of innocence based on reason and common sense arising out of some or all of the evidence that has been presented, or lack of evidence as the case may be.

"If after weighing and considering all of the evidence you are fully satisfied and entirely convinced of the defendant's guilt, you would be satisfied beyond a reasonable doubt.

"On the other hand, if you have any doubt based on reason and common sense arising from the evidence in the case, or the lack of evidence as to any fact necessary to constitute guilt, you would have a reasonable doubt, and

---

---

it would be your duty to give that defendant the benefit of that doubt and find him not guilty."

All defendants excepted and assigned as error the first paragraph set forth above.

The innovative portion of the charge which uses the phrase "possibility of innocence" has not been and is not now approved by this Court.

Other jurisdictions have considered similar phraseology in defining "reasonable doubt." In the case of *Connell v. State,* 153 Ga. 151 (2), 111 S.E. 545, the Georgia Court stated that reasonable doubt "is more than a possibility of innocence." A like statement is found in the case of *Teal v. State,* 122 Ga. App. 532, 177 S.E. 2d 840. In *United States v. Stead,* 422 F. 2d 183 (8th Cir. 1970) the Court stated: " . . . it is not necessary for the government to prove the guilt of the defendant beyond all possible doubt," and in *Hooper v. United States,* 216 F. 2d 684 (10th Cir. 1954) the Court stated that reasonable doubt is doubt based on reason. It is a "substantial doubt, as distinguished from a flimsy one" and is a "significant, an important doubt . . . . " See *State v. Bright,* 237 N.C. 475, 75 S.E. 2d 407.

We are of the opinion that the portion of the charge to which defendants here except places a greater burden on the State than the approved usage of such terms as "fully satisfied," "entirely convinced," or "satisfied to a moral certainty."

This portion of the charge is more favorable to defendants than that to which they are entitled. They therefore fail to show error prejudicial to them. *State v. Ingland,* 278 N.C. 42, 178 S.E. 2d 577; *State v. Goldberg,* 261 N.C. 181, 134 S.E. 2d 334; *State v. Shinn,* 238 N.C. 535, 78 S.E. 2d 388.

[7] Defendants maintain that the trial judge violated the provisions of G.S. 1-180 by expressing an opinion in his instructions concerning the jurors' attitudes during their deliberations. The asserted violation is embodied in the following excerpt from the trial judge's charge:

The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance. It is rarely productive of good for a juror upon entering the jury room to make an emphatic expression of his

opinion on the case or to announce a determination to stand for a certain verdict.

When one does that at the outset his sense of pride may be aroused, and he may hesitate to recede from an announced position, if shown it is false.

Remember that you are not partisans or advocates, but rather judges. The final test for quality of your service will lie in the verdict that you return to the Court, and not in the opinion any of you may hold as you retire. Have in mind that you will make a definite contribution to the efficient judicial administration if you arrive at a just and proper verdict in this case.

The challenged portion of the charge is taken from CALJIC, (3rd Ed.), a publication of West Publishing Company.

The California courts have approved instructions nearly identical to those in the above quotation. *People v. Selby,* 198 Cal. 426, 245 P. 426; *People v. Moraga,* 244 Cal. App. 2d 565, 53 Cal. Rep. 563.

In *State v. Pugh,* 183 N.C. 800, 111 S.E. 849, the jury, after some deliberation, returned to the courtroom without reaching a verdict. The trial judge at that time, *inter alia,* stated to the jury: "The case is one of importance to the State and to the defendant, and some jury must pass upon it." The court also stated that it was their duty "to consider the evidence and not to decline to agree on account of stubbornness . . . . " See also: *State v. Brown,* 280 N.C. 588, 187 S.E. 2d 85; *State v. Green,* 246 N.C. 717, 100 S.E. 2d 52.

The trial judge's instructions, without expressing an opinion as to whether any fact has been sufficiently proved, should segregate the material facts of the case, array the facts on both sides, and apply the pertinent law to the facts. *State v. Yoes,* 271 N.C. 616, 157 S.E. 2d 386; *State v. Biggs,* 224 N.C. 722, 32 S.E. 2d 352; *State v. Friddle,* 223 N.C. 258, 25 S.E. 2d 751.

We doubt that the instructions under attack added to the strength or clarity of the charge; however, when contextually read and tested by the principles above stated, we find no error prejudicial to defendants.

[8]   Finally, defendants White and Bryant contend that the trial judge erred in submitting to the jury as one of the possible verdicts a verdict imposing the death penalty.

Defendants rely on *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. 2d 346, as holding that there can be no death penalty in North Carolina. Assuming, *arguendo,* that *Furman* laid to rest any question as to the viability of the death penalty in North Carolina, we cannot sustain defendants' argument.

It has long been recognized in this State that submission of a question regarding the guilt of a defendant of murder in the second degree became harmless when the jury returned a verdict of manslaughter. *State v. Brannon,* 234 N.C. 474, 67 S.E. 2d 633; *State v. Artis,* 233 N.C. 348, 64 S.E. 2d 183; *State v. Beachum,* 220 N.C. 531, 17 S.E. 2d 674; *State v. Blackwell,* 162 N.C. 672, 78 S.E. 316.

We think the United States Supreme Court has taken an analogous position in a case in which a verdict imposing the death penalty was alternatively submitted to the jury. In *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed. 2d 797, decided on the same day as *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed. 2d 776, the Court stated:

> "In *Witherspoon v. Illinois,* 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770, we have held that a death sentence cannot constitutionally be executed if imposed by a jury from which have been excluded for cause those who, without more, are opposed to capital punishment or have conscientious scruples against imposing the death penalty. *Our decision in Witherspoon does not govern the present case, because here the jury recommended a sentence of life imprisonment.* The petitioner argues, however, that a jury qualified under such standards must necessarily be biased as well with respect to a defendant's guilt, and that his conviction must accordingly be reversed because of the denial of his right under the Sixth and Fourteenth Amendments to trial by an impartial jury. *Duncan v. Louisiana,* 391 U.S. 145, 20 L.Ed. 2d 491, 88 S.Ct. 1444; *Turner v. Louisiana,* 379 U.S. 466, 471-473, 13 L.Ed. 2d 424, 428, 429, 85 S.Ct. 546; *Irvin v. Dowd,* 366 U.S. 717, 722-723, 6 L.Ed. 2d 751, 755, 756, 81 S.Ct. 1639. We cannot accept that contention in the present case. The petitioner

adduced no evidence to support the claim that a jury selected as this one was is necessarily "prosecution prone," and the materials referred to in his brief are no more substantial than those brought to our attention in Witherspoon. Accordingly, we decline to reverse the judgment of conviction upon this basis." (Emphasis added.)

The United States Supreme Court during its 1971 Term granted petitions for certiorari in the cases of *State v. Chance*, 279 N.C. 643, 185 S.E. 2d 227; *State v. Doss*, 279 N.C. 413, 183 S.E. 2d 671; *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572; *State v. Miller*, 276 N.C. 681, 174 S.E. 2d 481; and *State v. Hamby and Chandler*, 276 N.C. 674, 174 S.E. 2d 385. On the same date that *Furman v. Georgia, supra,* was decided, the Court directed mandates to this Court in which it vacated judgments of the North Carolina Supreme Court in the above cases only "insofar as it leaves undisturbed the death penalty imposed." Opinions in accord with this mandate were filed by this Court on 31 August 1972. *State v. Miller*, 281 N.C. 740, 190 S.E. 2d 841; *State v. Hamby and Chandler*, 281 N.C. 743, 191 S.E. 2d 66; *State v. Chance*, 281 N.C. 746, 191 S.E. 2d 65; *State v. Westbrook*, 281 N.C. 748, 191 S.E. 2d 68; *State v. Doss,* 281 N.C. 751, 191 S.E. 2d 70.

We conclude, after carefully considering decisions of this Court and the Supreme Court of the United States, that where a verdict imposing the death penalty is erroneously submitted to a jury, a defendant is not entitled to a new trial on that ground alone.

Here the verdict of the jury required imposition of a sentence of life imprisonment, and this verdict, in effect, cured any possible error in submitting a verdict imposing the death penalty.

Defendants fail to show prejudicial error in the trial below.

No error.